**Dissenting Opinion filed December 5, 2025.**



**In The**

# Fifteenth Court of Appeals

### NO. 15-24-00034-CV

**EXXON MOBIL GLOBAL SERVICES, Appellant**

**V.**

**STATE OFFICE OF ADMINISTRATIVE HEARINGS, AND KENESHIA WASHINGTON IN HER OFFICIAL CAPACITY AS ADMINISTRATIVE LAW JUDGE, Appellees**

**On Appeal from the 419th District Court**
**Travis County, Texas**
**Trial Court Cause No. D-1-GN-23-001403**

## DISSENTING OPINION

A machine can scan a record for the word "industrial" faster than we can. After digesting the Court's opinion today, the machine might be forgiven for concluding that this "evidence" by itself bars an appraisal appeal to SOAH.

But on this record, judges should be more skeptical. Judges know that on occasion someone among the hundreds of employees in the state's 253 appraisal districts makes a mistake, perhaps by electronically labeling property "industrial"

when it is not. Judges would be skeptical that computers located in an office tower in the heart of downtown Houston really are "industrial." They would be skeptical that equipment appraised previously at $45 million would not be moved, replaced, or otherwise decrease a single penny in value despite the imminent closure of the leased offices where it was located due to a major corporate relocation. And judges would be skeptical when a regional property tax manager for Exxon Mobil swears under oath based on personal knowledge that *none* of the appraisal district's assumptions about the computers here are true—and *nobody* from the appraisal district contradicts her affidavit.

Skeptical judges require evidence. Yet four tribunals in a row—the ARB, SOAH, the district court, and now this Court—have said that if a document *looks like* it is from HCAD (though nobody swore it was) and *lists* the property as "Tangible, Industrial," then neither administrative nor judicial judges need look any further. If courts cannot do any better than a machine in these circumstances, we can hardly complain when we get replaced by them.

\* \* \*

The Court makes three primary errors to justify disregarding the evidence in the record here. *First*, it omits the second half of the standard of review that *requires* evidence to be considered on pleas to the jurisdiction.[1] A litigant's pleadings, when liberally construed, must affirmatively demonstrate the court's jurisdiction to hear the case, but EMGS's pleadings easily clear that bar.[2] But when *evidence* is also

---

[1] HCAD's motion to dismiss at SOAH, and SOAH's plea to the jurisdiction in the district court are governed by the same standard of review. *See City of Austin v. Powell*, 704 S.W.3d 437, 448 (Tex. 2024) ("A party's characterization of its pleadings does not control how the courts review them. Whatever the government may call its jurisdictional challenge—a plea to the jurisdiction, a motion to dismiss, or a motion for summary judgment—we look to its substance.").

[2] Immunity "does not preclude prospective injunctive remedies in official-capacity suits against government actors who violate statutory or constitutional provisions." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 369 (Tex. 2009). EMGS alleged that by refusing to consider evidence

2

offered (as EMGS did in both SOAH and the district court), a reviewing court is "not required to look solely to the pleadings but may consider evidence *and must do so* when necessary to resolve the jurisdictional issues raised."[3] Neither the Court's opinion nor SOAH's brief ever mentions the mandatory evidence half of this standard, likely because nobody offered any evidence that the computers here were "industrial."

*Second*, the Court affirms dismissal of this case by blaming the victim: "EMGS could have chosen to appeal to the district court, which would have allowed it to challenge the industrial classification with a full evidentiary hearing"; but since it chose to appeal to SOAH it "cannot be heard to complain now that its constitutional rights were violated." *Maj. Op. at 10*. But requiring a judicial appeal as a prerequisite to an administrative appeal is worse than simply prohibiting any administrative appeal. When the Legislature provides two avenues for appeal, one judicial and one administrative, we have no business insisting on the former. The Legislature provided for ARB appeals to SOAH precisely because appeals to district court were too slow and expensive to be worth it.[4] If SOAH had jurisdiction, EMGS was entitled to choose that option and waived no constitutional rights when it did so.

The Court's opinion assumes that requiring SOAH to "conduct" or "hold an evidentiary hearing" would impose something like the "full evidentiary hearing" that would be required in district court. I agree that imposing district court procedures on

---

regarding jurisdiction, "the ALJ deprived Exxon of the due process rights it was entitled to," and "acted outside of her legal authority and thus ultra vires." That law applies here because SOAH is a government agency and ALJs are government employees. *See* TEX. GOV'T CODE §§ 2003.021(a), 2003.041. The parties point to no statute or caselaw that immunizes SOAH or ALJs from suits alleging ultra vires or unconstitutional acts.

[3]     *Nettles v. GTECH Corp.*, 606 S.W.3d 726, 734 (Tex. 2020) (emphasis added); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000) (emphasis added).

[4]     House Research Organization, Bill Analysis, Tex. H.B. 3612, 81st Leg., R.S. (2009).

SOAH would defeat the primary purpose for the latter: an appraisal appeal that is prompt and less costly. But a "hearing" does not require a plenary trial, nor live witness testimony, nor even an appearance by counsel; a "hearing" may take place "entirely on paper, or based solely on affidavits and exhibits filed beforehand."[5] The ALJ had everything she needed in the record before her; due process required her only to look at it, which she declined to do.

*Third*, the Court concedes that while the ALJ had a ministerial duty "to consider [her] jurisdiction before proceeding," it maintains that she fulfilled that duty by recognizing she could "not proceed with the appeal because HCAD had designated the property as industrial." *Maj. Op. at 8*. But a tribunal can "consider jurisdiction" only by looking at the facts; relying on the *ipse dixit* of one party is the opposite of due process.

The Court excuses the ALJ's failure to perform this duty because the Legislature "gave SOAH no express authority to decide how to classify property." *Id.* That was the logic of the ALJ's order of dismissal, which stated that "whether the subject property should be categorized as industrial property is not an issue to be decided at a SOAH hearing." But this confuses *jurisdictional* facts with *merits* facts.

A court does not *exercise* jurisdiction when it decides if it *has* jurisdiction. If the rule were otherwise, courts could *never* consider whether they have jurisdiction if the answer might be "no." Here, jurisdiction and the merits are completely independent; whether property is "industrial" is *decisive* as to SOAH's jurisdiction, but *irrelevant* to the merits here which is property value, as the Texas Constitution allows neither a higher nor lower appraisal for industrial property.[6] "[A] trial court

---

[5]      *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 783 (Tex. 2005).

[6]      *See* TEX. CONST. art. VIII, § 1(a) ("Taxation shall be equal and uniform."); *id.* § 1(b) ("*All* real property and tangible personal property in this State, unless exempt as required or permitted by this Constitution . . . shall be taxed in proportion to its value" (emphasis added)).

*must resolve at the outset* jurisdictional fact disputes that arise *independently* from the merits of the claim."[7] The Legislature did not have to give SOAH "express authority" to decide whether property is industrial; the constitutional separation of powers requires that "courts *always* have the duty to ensure that subject-matter jurisdiction—their own and that of the lower courts—is secure."[8]

*     *     *

We do no service to the Texas civil justice system by making administrative procedures more confusing or difficult than necessary. This case could have been resolved four years ago if anybody at the ARB, SOAH, or the district court had demanded answers to two simple questions: (1) were the computers here *really* "industrial" property; and (2) were they *really* worth $45 million in value on January 1, 2021? That would not have taken long, because nobody with the ARB, HCAD, or SOAH—not even their lawyers—has ever stated that the answer to either question is "yes." Dismissing this case without addressing these simple questions while years pass and costs mount up "creates the appearance not that the courts are doing justice, but that they don't know what they are doing."[9]

## CONCLUSION

In the 1947 holiday classic *Miracle on 34th Street*, U.S. Postal employees deliver children's letters addressed to Santa to the (fictional) proceedings in a New York trial court, after which the trial judge renders his verdict: "Since the United States Government declares this man to be Santa Claus, this court will not dispute

---

[7]     *Van Dorn Preston v. M1 Support Servs., L.P.*, 642 S.W.3d 452, 459 (Tex. 2022) (emphasis added).

[8]     *Univ. of Tex. Rio Grande Valley v. Oteka*, 715 S.W.3d 734, 744 (Tex. 2025) (cleaned up) (emphasis added).

[9]     *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 466 (Tex. 2008).

it. Case dismissed."[10] Changing the government agency there to the smaller one here, and the legal issue there to the much larger financial one here, and you get *exactly the same judgment* that four Texas tribunals have delivered as of today: "Since the Harris County Appraisal District declares this property to be industrial, this court will not dispute it. Case dismissed."

The stakes here are not letters to Santa but excess property taxes of over $1 million in real money.[11] We have to do better than this. We will never instill confidence in Texas civil and administrative courts if we do not. I respectfully dissent.

/s/ Scott A. Brister
Scott A. Brister
Chief Justice

Before Chief Justice Brister and Justices Field and Farris.

---

[10] MIRACLE ON 34TH STREET (20th Century-Fox 1947).

[11] For the January 1, 2021, appraisal, HCAD simply rolled over the 2020 appraisal of $45,487,537 with no explanation. EMGS presented affidavit testimony that the cost of the only equipment left at both locations on January 1, 2021, was $1,600,000—*96 percent less*. Applying the tax rates listed in SOAH's record, EMGS's property taxes were $1,060,160 if HCAD was correct, but only $37,291 if EMGS was correct.